**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | : **Civil Action No. 3:15-cv-7912-BRM** |
| | : Hon. Brian R. Martinotti, U.S.D.J. |
| | : |
| JOL ADVISORS, INC., | : |
| | : **ON APPEAL FROM ORDERS OF** |
| Debtor. | : **THE UNITED STATES BANKRUPTCY** |
| | : **COURT FOR THE DISTRICT OF** |
| | : **NEW JERSEY** |
| DANIEL E. STRAFFI, Chapter 7 Trustee | : |
| | : [Adv. Pro. No. 15-1982 (CMG)] |
| Plaintiff, | : [Bankr. Case No. 14-16915 (CMG)] |
| v. | : |
| | : |
| TD BANK, N.A., successor by merger to | : |
| Commerce Bank, N.A., STEVEN J. | : |
| SCHWARTZ, BRET J. SCHWARTZ, | : |
| WAYNE SULLIVAN, ABS SOUTHEAST, | : |
| LLC, COASTAL INSULATION & | : |
| INSTALLED PRODUCTS, LLC, | : |
| ENGELHARD DRIVE MONROE, LLC, | : **OPINION** |
| ELMSFORD INSULATION CORP., SEAL | : |
| RITE PR, SEAL RITE INSULATION OF | : |
| NEW YORK, INC., S&A PLATINUM, | : |
| LLC, S&S HOLDING, and N/R | : |
| PLATINUM TRANSPORT, | : |
| | : |
| Defendants. | : |
| | : |

**MARTINOTTI, DISTRICT JUDGE**

Appellant Daniel E. Straffi, Chapter 7 Trustee for JOL Advisors, Inc. and plaintiff in the underlying adversary proceeding ("Trustee" or "Appellant"), is appealing (Appellant's Br. (ECF No. 4)) the following orders entered by the Hon. Christine M. Gravelle, U.S.B.J., on October 22, 2015: (1) an order (Adv. Pro. ECF No. 19) granting the motion to dismiss with prejudice (Adv.

Pro. ECF No. 9)[1] filed by TD Bank, N.A. ("TD"), Wayne Sullivan ("Sullivan"), ABS Southeast, LLC ("ABS"), and Coastal Insulation & Installed Products, LLC ("Coastal") (collectively, the "TD Defendants"); and (2) an order (Adv. Pro. ECF No. 20) granting the motion to dismiss with prejudice (Adv. Pro. ECF No. 5) filed by Steven Schwartz ("S. Schwartz") and Bret Schwartz ("B. Schwartz") (collectively, the "Schwartz Defendants"). For the reasons set forth below, the orders of the Bankruptcy Court are **AFFIRMED** as to TD and **REVERSED AND REMANDED** as to Sullivan, ABS, Coastal, and the Schwartz Defendants for further discovery consistent with this Opinion.

## I. BACKGROUND

Herein, the Court summarizes the procedural history of the parties as well as the various transactions and relationships between the interrelated and intertwined individuals and companies as gleaned from the Trustee's Adversary Complaint (Adv. Pro. ECF No. 1) and, where necessary, the motions to dismiss (Adv. Pro. ECF No. 5, 9) which led to this appeal.

## A. The Parties And Their Lending Relationship

Debtor JOL Advisors, Inc., f/k/a Coastal Insulation Corp. (the "Debtor"), was a contractor that provided fiberglass insulation and/or form insulation services for both new commercial and residential construction. (Adv. Pro. ECF No. 1 at ¶¶ 5, 19.) S. Schwartz is the Debtor's principal. (*Id.*)

In April 2006, the Debtor borrowed $825,000 from Commerce Bank ("Commerce") and executed a Term of Credit Line Note ("Original Debtor Loan"). (*Id.* at ¶ 20.) Five parties

---

[1] Appellant designated Adv. Pro. ECF No. 7 as TD Defendants' Motion to Dismiss. (Appellant's Desig. of R. and Statement of Issue Pres. (ECF No. 3) at 2.) A review of the docket shows that TD Defendants' complete Motion to Dismiss was docketed at Adv. Pro. ECF No. 9 and will be cited as such throughout this Opinion.

guaranteed the Original Debtor Loan: (1) S. Schwartz; (2) his son, B. Schwartz; (3) Elmsford Insulation Corp. ("Elmsford"), a company owned, in part, by S. Schwartz; (4) Seal-Rite Insulation of New York, Inc. ("Seal-Rite"), a company owned by S. Schwartz; and (5) Engelhard Drive Monroe, LLC ("Engelhard"). (*Id.* at ¶¶ 6, 12, 17, 22.) Each executed an Unlimited Guaranty and all were ultimately named as defendants in the Adversary Proceeding. (*See id.*)

In October 2007, the Debtor, Elmsford, and Seal-Rite executed an Amended and Restated Line of Credit Term Note adding Elmsford and Seal-Rite to the Original Debtor Loan as borrowers. (*Id.* at ¶ 23.) The Debtor also executed a Security Agreement providing a security interest in the Debtor's assets. (*Id.* at ¶ 24.) The Original Debtor Loan was extended in 2010, with the maturity date ultimately being extended through September 5, 2013. (*Id.* at ¶ 25.)

Separately, in June 2006, Engelhard received a loan from Commerce in the amount of $3,825,000, for construction on property owned by Englehard but used by the Debtor (the "Engelhard Loan"). (*Id.* at ¶¶ 26, 29, 31.) The Englehard Loan was guaranteed by the Debtor, the Schwartz Defendants, Elmsford, and Seal-Rite. (*Id.* at ¶ 27.) The Englehard Loan was also secured by a mortgage against the property out of which the Debtor operated. (*Id.* at ¶¶ 30-31.) In October 2011, the Englehard Loan – with an outstanding principal balance of $3,535,267 – and related guaranties were amended and restated. (*Id.* at ¶¶ 32-33.) Additionally, S. Schwartz executed a Guaranty of Payment personally guaranteeing the Englehard Loan. (*Id.* at ¶ 33.)

In May 2007, Commerce issued a third loan, this time to S&A Platinum, LLC ("S&A"), B. Schwartz, and John Achille ("Achille") (the "S&A Loan"). (*Id.* at ¶ 34-35.) The S&A Loan was guaranteed by the Debtor and supported by a Mortgage Loan Note against properties in Highland

Park, New Jersey. (*Id.*) S&A is owned jointly by B. Schwartz and Achille. (*Id.* at ¶ 34.) The S&A

Loan was amended in July 2007 to increase the principal amount to $1,024,000. (*Id.* at ¶ 36.)[2]

In June 2009, the Debtor, along with Seal-Rite and Elmsford, took out a loan from TD, the

successor by merger to Commerce, for $70,000 ("Second Debtor Loan"). (Adv. Pro. ECF No. 1 at

¶ 39.) In October 2011, the Second Debtor Loan was amended and restated and had an outstanding

principal balance of $35,305. (*Id.* at ¶ 40.)

**B. Superior Court Action and Replevin Order**

After the borrowers defaulted on the various loans, TD filed suit in November 2012 against

the Debtor, the Schwartz Defendants, Elmsford, Seal-Rite, Engelhard, S&A and Achille

(collectively, "Superior Court Defendants") in the Superior Court of New Jersey, Camden County,

Law Division ("Superior Court Action"). (*Id.* at ¶ 45.) The Debtor's liability for the loans as well

as the loans' values at the time of the Superior Court Action is in dispute.[3]

---

[2] The TD Defendants indicate S&A, Achille, and B. Schwartz defaulted on the S&A Loan and, following a separate Superior Court action, TD continues to collect on that loan. Contrary to the Trustee's assertions, the TD Defendants state the Debtor is not a party to this loan. (Adv. Pro. ECF No. 9-1 at 4.)

[3] In the Adversary Complaint, the Trustee argued the Debtor's loans remained current while Engelhard, S&A, B. Schwartz, and Achille failed to make payments under their respective loans, stating, with respect to the Debtor:

> Except for the alleged cross-default provisions in the loan documents, there were no defaults on the Original Debtor Loan or Second Debtor Loan, and minimal amounts were owed to TD by the Debtor. Despite the foregoing, the Debtor gave up its rights in its assets for no consideration.

(*Id.* at ¶¶ 42-44, 47-48.) In the Schwartz Defendants' Motion to Dismiss the Adversary Complaint, the Schwartz Defendants claim the Debtor experienced severe financial difficulties from 2008 until 2013 and ultimately defaulted on a series of loans from TD. (Adv. Pro. ECF No. 5-1 at 2.) The TD Defendants in their Motion to Dismiss allege TD was collectively owed $4,431,027 from all defendants in the Superior Court Action. (Adv. Pro. ECF No. 9-1 at 2.)

Nevertheless, on April 5, 2013, the Honorable Anthony M. Pugliese, J.S.C. entered an Order for Issuance of a Writ of Replevin and Other Relief (the "Replevin Order") (Cert. of Alice Paxson in Support of TD Defs.' Mot. to Dismiss, Ex. B (Adv. Pro. ECF No. 9-7)), requiring the Superior Court Defendants turn over all accounts receivable, inventory, equipment and other assets securing their debt to TD. (Adv. Pro. ECF No. 1 at ¶¶ 49-50.) The Debtor ceased operations in April 2013, shortly after the Replevin Order was issued. (*Id.* at ¶ 51.)

The parties do not provide any additional information about service of the Replevin Order, service of a Writ of Replevin, or any further attempts at collection pursuant to the Replevin Order. Rather, the Court is only aware that the Debtor's property eventually came into Coastal's possession through a series of transactions. (*Id.* at ¶¶ 52, 54; Adv. Pro. ECF No. 5-1 at 2; Adv. Pro. ECF No. 9-1 at 3.) The parties dispute the precise manner through which this occurred – i.e., whether TD executed on the Writ or sold its interest in the Debtor's loans through a series of transactions independent from the Writ  – as well as the motivation for the sale.

The Adversary Complaint alleges ABS and Coastal, both owned by Sullivan, subsequently began to purchase the Debtor's assets as well as its debt to TD. (Adv. Pro. ECF No. 1 at ¶¶ 52, 54.) Assets purchased by ABS were then transferred to Coastal, which, in essence, allowed the Debtor to continue its operations. (*Id.* at ¶¶ 9, 52, 64.) Coastal continues to employ all of the Debtor's employees, and S. Schwartz serves as the company's President and CEO. (*Id.* at ¶¶ 65-67.) Moreover, at the time the assets were purchased, Coastal's bank account and the Debtor's bank account were both under control of the Debtor's former employees, and the Debtor used some of the funds it received to make payments that directly benefitted Coastal and its employees. (*Id.* at ¶¶ 54-58.) The Debtor's customers continued to make payments to the Debtor's accounts, at which point the funds were transferred to Coastal's account. (*Id.* at ¶ 60.)

In their Motion to Dismiss, the Schwartz Defendants state S. Schwartz engaged in discussions with Sullivan regarding ABS's purchase of the Debtor, but that Sullivan "was unwilling to pay an amount that satisfied the Debtor's obligations." (Adv. Pro. ECF No. 5-1 at 2.) Sullivan consequently "proceeded to acquire the secured positions of TD Bank at a significant discount." (*Id.*)

The TD Defendants do not contest ABS purchased the Debtor's assets, nor that the Debtor's operations continued through Coastal. Rather, as set forth in their Motion to Dismiss, the TD Defendants contend ABS and/or Sullivan properly came into possession of the Debtor's assets through loan sale agreements. (Adv. Pro. ECF No. 9-1 at 3.) With respect to the Second Debtor Loan, the TD Defendants state:

> After TD Bank filed its Motion for the Issuance of a Writ of Replevin and Other Relief, but before the [motion] was decided, TD Bank was contacted by Sullivan [not ABS] about purchasing, for $2.5 million, all of TD Bank's interests in loans made to Debtor and S&A, and all guarantees and security agreements in connection therewith. . . .
> After brief negotiation between TD Bank's attorney and Sullivan's attorney, TD Bank agreed to accept $500,000 . . . from ABS for the purchase of [Second Debtor Loan] and all of [TD]'s rights in and to the Writ of Replevin.

(*Id.*) In other words, TD Defendants argue the Replevin Order required the Debtor to turnover assets to TD, which were then purchased by ABS through a Loan Sale Agreement (the "ABS Loan Sale Agreement"), an "arm's length transaction," the price of which was determined by TD "based upon its own, independent evaluation and business judgment of fair value." (*Id.*)

Similarly, several months after the Replevin Order was issued, TD alleges it engaged directly with Sullivan in an arm's length transaction to sell its rights to the Engelhard Loan (the "Sullivan Loan Sale Agreement"). (*Id.* at 4.) As of October 2012, the total amount due and owing

under the Englehard Loan was $3,571,195.52. (*Id.*) Based upon TD's own independent evaluation, Sullivan paid $2,750,000 to TD in consideration for the Sullivan Loan Sale Agreement. (*Id.*)

**C. The Bankruptcy Proceedings**

On April 8, 2014, the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the U.S. Code (Bankr. Pet. ECF No. 1), and the Trustee was appointed the following day (Bankr. Pet. ECF No. 3). The Trustee retained an accounting firm, Bederson LLP, which determined the Debtor's assets had a book value of $7,522,439, in contrast to the $3,474,755 paid by ABS in consideration. (Adv. Pro. ECF No. 1 at ¶ 70.) In total, the Trustee contended the Debtor surrendered assets at a loss of almost $7,000,000 "after factoring in consideration for the balances on the Original Debtor Loan and Second Debtor Loan totaling $56,000." (*Id.* at ¶ 71.)

Consequently, the Trustee filed an Adversary Complaint on June 10, 2015, alleging constructive fraud pursuant to N.J.S.A. 25:2-25(b); recovery of property of the estate pursuant to 11 U.S.C. §§ 541-42; recovery of preferential transfer pursuant to 11 U.S.C. § 547(b); conspiracy; breach of implied covenant of good faith and fair dealing and commercial bad faith; tortious interference with contractual relations and prospective economic advantage; civil conspiracy; unjust enrichment; breach of fiduciary duty (as to S. Schwartz, only); and seeking an award of fees pursuant to Fed. R. Bankr. P. 7008(b). (*Id.* at ¶¶ 49-50.) The Trustee alleged the Schwartz Defendants conspired with each other and others, including Sullivan and ABS, to "orchestrate[] the plan to buy the TD [d]ebt, Debtor's assets, and operate [Coastal], to the detriment of the Debtor's creditors," all while the Debtor's assets were used to benefit Coastal, and while "S. Schwartz ceased operations of [the Debtor]" and "secure[d] employment through the identical business, [Coastal], without any TD debt or guarantees." (*Id.* at ¶¶ 76-79.)

On August 21, 2015, the Schwartz Defendants filed a motion to dismiss the Adversary Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6),[4] arguing the Trustee's claims are pure conjecture and the allegations are highly speculative. (Adv. Pro. ECF No. 5-1 at 2.) Conceding that inferences must be drawn in favor of the Trustee, the Schwartz Defendants argued the Trustee has not met its burden to "plead claims which have a statutory basis and to request relief which is contemplated under the statutes cited" nor did he plead with specificity "with respect to allegations amounting to fraud or conspiracy." (Adv. Pro. ECF No. 5-1 at 2.) Specifically, the Schwartz Defendants argued: (1) Counts I, V, and VI have no application to them (*see id.* at Sections C, E, F); (2) Counts IV through VIII were not plead with particularity (*see id.* at Section D); (3) the unjust enrichment, breach of fiduciary duty, and conspiracy claims fail under the respective statute of limitations (*see id.* at Section G); (4) the Trustee failed to plead a basis for attorney's fees (*see id.* at Section H); (5) and the Bankruptcy Court should not intervene under the *Rooker-Feldman* Doctrine (*see id.* at Section I).

On September 17, 2015, the TD Defendants filed a motion to dismiss the Adversary Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), arguing the Adversary Complaint was a "belated effort by [the Trustee] to unwind [the Replevin Order] on the basis that Debtor['s] largest creditor, [TD], did not receive sufficient consideration in the satisfaction of the secured debt owed to it." (Adv. Pro. ECF No. 9-1 at 1.) TD Defendants' motion included and relied on the certifications of Sullivan and Alice Paxson of TD and cited case law as to why the Court could consider them. (*Id.* at 1-2 & nn.1, 2.)

---

[4] Federal Rule of Bankruptcy Procedure 7012(b) provides that Fed. R. Civ. P. 12(b) applies to adversary proceedings. Thus, defendant's motions to dismiss for lack of subject matter jurisdiction and failure to state a claim are governed by Fed. R. Civ. P. 12(b)(1) and 12(b)(6), respectively.

The TD Defendants argued the Debtor's assets were fairly and independently appraised by TD and purchased by ABS and/or Sullivan after the Replevin Order was issued. Because TD's interest in the Debtor's assets vested when the ABS and Sullivan Loan Sale Agreements where executed pursuant to the Replevin Order, the TD Defendants argued the Bankruptcy Court did not have subject matter jurisdiction under *Rooker-Feldman* Doctrine and the Superior Court was the proper venue to challenge the Replevin Order. (*Id.* at 5, 9, and Section IV(A).) The TD Defendants further argued the Adversary Complaint fails to state a claim. (*See id.* at Section IV(B).)

In opposition, the Trustee argued the Bankruptcy Court had subject matter jurisdiction because it had exclusive jurisdiction over property of the estate and, when reading the allegations in a light most favorable to the Trustee, the Bankruptcy Court had no reason to find against jurisdiction. (Adv. Pro. ECF No. 13 at 8.) The Trustee further argued "under [28 U.S.C.] Section 157(c), a bankruptcy court has jurisdiction to submit proposed findings of fact and conclusions of law to the district court in proceedings 'related to' a bankruptcy case." (*Id.* at 8.) The Trustee did not specifically address the *Rooker-Feldman* Doctrine in its opposition.

Additionally, the Trustee argued its fraud claims were adequately pled, the motion was premature, and that further discovery was necessary. (*Id.* at 5.) He succinctly states, "As the facts currently show, the Debtor's assets in excess of $7,500,000 were transferred to Sullivan for approximately $3,400,000 to satisfy TD Bank's debt. Who what where when and why needs to be answered." (*Id.* at 3.) Alternatively, the Trustee requested permission to amend the Adversary Complaint (*id.* at 5), noting that not all Defendants had answered or joined in the motion and requesting the Adversary Complaint not be dismissed as to those defendants (*id.* at 2).

On October 20, 2015, the Bankruptcy Court held oral argument on both motions to dismiss. (Trans. of Oral Arg. (Adv. Pro. ECF No. 32).) The Trustee's counsel argued a question existed as

to whether "a tax sale certificate that was purchased . . . could be considered a fraudulent transfer" (*Id.* at 6:11-13). The Trustee's counsel further argued, "[E]veryone received a benefit in this case, including TD Bank, ABS, and Mr. Sullivan, and the Schwartz [D]efendants, except for the [D]ebtor and its creditors. And that's the underlying basis for the [A]dversary [C]omplaint." (*Id.* at 6:18-21.) Counsel argued the motions to dismiss were, at a minimum, premature because the Trustee should be allowed to engage in discovery to investigate the parties' relationships and determine whether TD Bank had a perfected lien on all of the Debtor's assets. (*Id.* at 7:8-12, 7:24-8:3.)

In response, counsel for the Schwartz Defendants argued: "[T]here is no defense to the *Rooker-Feldman* issue. You've got a State Court order that awarded the surrender of these assets. And the execution of that by the acquirer of the loans of TD Bank. I don't know how [counsel] or the Trustee gets by *Rooker-Feldman*." (*Id.* at 9:16-20.) Counsel for the TD Defendants added:

> . . . I know the initial question was how to get around *Rooker-Feldman*. And I think the answer to that is, you can't. There's a writ of replevin here, ordered by the State Court. Pursuant to that order, all rights to the assets that are at issue here were to be transferred to TD Bank by Court order.
>
> That writ ultimately was sold along with other assets. Namely, assets of TD Banks, which I don't even understand how or why TD Bank is even in this litigation since it only sold its own assets. But I guess that's a separate issue . . . .
>
> But you have an order of the State Court. Once that order is issued, the debtor no longer has any right in those assets. The assets are then transferred pursuant to the writ of replevin, which is an order of the State Court of New Jersey, end of story. What the Trustee is seeking now is to undo that writ of replevin. Asking your Honor to go back and say that writ of replevin has to be vacated. The foreclosure on the writ of replevin in essence has to be vacated. . . .

(*Id.* at 10:16-11:8.)

Ultimately, the Bankruptcy Court granted the motions to dismiss citing two reasons: (1) *Rooker-Feldman*; and (2) failure to state a claim, noting:

So both [motions] will be granted . . . on the basis of the
*Rooker-Feldman* doctrine and the fact that TD Bank had . . .
executed on its default and obtained a writ of possession.

And I think that once the property is out of the estate, or
away from the Debtor, the debtor has no rights left in the property.
That that's the end of the story. And . . . the ten counts in the
complaint would necessarily fall without, there's nothing to base
them on once the writ of replevin issued.

(*Id.* at 16:19-17:3.)

## D. Appeal

On November 11, 2015, the Trustee filed a Notice of Appeal with the District Court for the
District of New Jersey. (ECF No. 1.) The matter was fully briefed by February 5, 2016, and the
case was transferred to this Court in August 2016.

## II. APPELLATE JURISDICTION

A district court has appellate jurisdiction over the final judgments, orders, and decrees of
a bankruptcy court. 28 U.S.C. § 158(a)(1). Appellant is seeking review of the Bankruptcy Court's
Orders, which dismissed the Adversary Complaint with prejudice. These constitute final orders
over which this Court has appellate jurisdiction. *See, e.g.*, *In re Mullarkey*, 536 F.3d 215, 220 (3d
Cir. 2008) (confirming district court's jurisdiction over bankruptcy appeal in which bankruptcy
court issued, among others, an order granting motion to dismiss complaint); *Taylor v. Slick*, 178
F.3d 698, 701 (3d Cir. 1999) (finding Third Circuit had jurisdiction through 28 U.S.C. § 158(d)
over the district court's appellate review of a bankruptcy appeal involving motion to dismiss an
adversary complaint).

## III. LEGAL STANDARDS

## A. Standard of Review on Appeal

"The proper standard of review to be applied by a district court when reviewing a ruling of
a bankruptcy court is determined by the nature of the issues presented on appeal." *In re Beers*,

11

2009 WL 4282270, *3 (D.N.J. 2009) (quoting *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee*, 321 B.R. 147, 157 (D.N.J. 2005). A district court reviews "the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *In re United Healthcare System, Inc.*, 396 F.3d 247, 249 (3d Cir. 2005) (quoting *In re Trans World Airlines, Inc.*, 145 F.3d 124, 130-31 (3d Cir. 1998)).

## B. Rule 12(b)(1)

When a defendant moves to dismiss a claim for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the court must determine whether defendant is making a "facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Federal Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial attack challenges the legal sufficiency of the claim and requires the court to consider only "the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Gould Elecs.*, 220 F.3d at 176; *Mortensen*, 549 F.2d at 891 ("The facial attack does offer similar safeguards to the plaintiff [as a 12(b)(6) motion]: the court must consider the allegations of the complaint as true."). Under a factual attack, however, the challenge is to the trial court's "very power to hear the case." *Mortensen*, 549 F.2d at 891. Thus:

> [T]here is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Mortensen*, 549 F.2d at 891. Moreover, when a defendant makes a factual attack, "the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." *Gould Elecs.*, 220 F.3d at 178.

Regardless of the analysis, the plaintiff bears the burden of demonstrating the existence of subject matter jurisdiction. *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006); *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009) (citing *Carpet Grp. Int'l v. Oriental Rug Importers Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000)).

Here, TD Defendants are asserting a facial 12(b)(1) challenge. *See Frame v. Lowe*, Civ. No. 09-2673, 2010 WL 503024, at *5-6 (D.N.J. Feb. 8, 2010) (analyzing a *Rooker-Feldman* challenge as a facial attack on subject matter jurisdiction). Therefore, the Court considers the allegations in the light most favorable to Appellant, the Plaintiff in the Adversary Complaint. *Gould Elecs.*, 220 F.3d at 176; *Mortensen*, 549 F.2d at 891.

**C. Rule 12(b)(6)**

Under Rule 12(b)(6), a court may dismiss a claim for failing to state a basis upon which relief can be granted. In deciding a Rule 12(b)(6) motion, "courts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008). However, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleading must contain more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555) (internal citations and quotations omitted). Thus, a complaint will survive a motion to dismiss if it contains "sufficient factual matter, as accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570) (internal citations and quotations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

13

The Court's review on a motion to dismiss is, with few exceptions, limited to the pleadings. Fed. R. Civ. P. 12(d); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Where documents outside the complaint are considered, the Court is required to convert the motion to one for summary judgment and provide notice of the conversion to the parties. *Pension Ben. Guar. Corp.*, 998 F.2d at 1196.

Here, the Bankruptcy Court did not notify the parties that their motions would be treated as motions for summary judgment. Accordingly, this Court will review, *de novo*, the motions to dismiss without consideration of the certifications attached to the motions. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426; *Pension Ben. Guar. Corp.*, 998 F.2d at 1196.

## IV. DECISION

Accepting the allegations in the Adversary Complaint as true and viewing them in the light most favorable to the Appellant, the Court finds Appellant sufficiently stated a claim against Sullivan, ABS, Coastal, S. Schwartz, and B. Schwartz but has failed to state a claim against TD.

As an initial matter, Defendants' reliance on the *Rooker-Feldman* doctrine is misplaced. The *Rooker-Feldman* doctrine is a "narrow doctrine" that "applies only in limited circumstances." *Lance v. Dennis*, 546 U.S. 459, 464-66 (2006); *see Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010). "Under the *Rooker-Feldman* doctrine, a district court is precluded from entertaining an action, that is, the federal court lacks subject matter jurisdiction, if the relief requested effectively would reverse a state court decision or void its ruling." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 192 (3d Cir. 2006). In other words, "[t]he *Rooker-Feldman* doctrine prevents 'inferior' federal courts from sitting as appellate courts for state court judgments." *In re Knapper,* 407 F.3d 573, 580 (3d. Cir. 2005) (citing *Port Auth.*

*Police Benevolent Assoc., Inc. v. Port Auth. of N.Y. and N.J. Police Dept.*, 973 F.2d 169, 173 (3d Cir. 1992)).

The Supreme Court has set forth four requirements for *Rooker-Feldman* to bar jurisdiction, ultimately "confin[ing]" its application to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] court proceedings commenced and inviting [federal] court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). The four requirements are: "(1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *B.S. v. Somerset Cnty.*, 704 F.3d 250, 259-60 (3d Cir. 2013) (quoting *Great W. Mining & Mineral Co.*, 615 F.3d at 166).

Significantly, the second requirement is viewed as "an inquiry into the source of the plaintiff's injury." *Great W. Mining & Mineral Co.*, 615 F.3d at 166 (citing *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547 (3d Cir.2006)). Where a plaintiff complains the source of their injury is defendant's actions rather than the underlying judgment itself, "the federal suit is independent, even if it asks the court to deny a legal conclusion reached by the state court." *Great W. Mining*, 615 F.3d at 167.

Here, Appellant is not asking the Court to "review and reject" the Replevin Order. In fact, no party contests the issuance or validity of the Replevin Order. (ECF No. 4 at 15.) Instead, the parties dispute how the property was transferred subsequent to the Replevin Order (Adv. Pro. ECF No. 1 at ¶¶ 52, 54; Adv. Pro. ECF No. 5-1 at 2; Adv. Pro. ECF No. 9-1 at 3), and the Adversary Complaint is silent as to whether the sale of the Debtor's assets took place pursuant to the Writ of

15

Replevin, or whether ABS and/or Sullivan pursued TD's interest on the various loans through transactions independent of the Writ. Viewing the allegations in the light most favorable to Appellant, *Gould Elecs.*, 220 F.3d at 176; *Mortensen*, 549 F.2d at 891, the source of the Debtor's injury is Defendant's actions, and therefore, application of the *Rooker-Feldman* doctrine was in error.

Further, the Bankruptcy Court decision to dismiss the Adversary Complaint for lack of subject matter jurisdiction was based on the assumption that Debtor lost title to its assets as a result of the Writ of Replevin prior to the Bankruptcy filing. Significantly, the Writ of Replevin, if properly executed on the Debtor's assets, would have given possession, not title, to the holder of the Writ. *See* N.J.S.A. 4:61. By considering information beyond the pleadings, the Bankruptcy Court incorrectly concluded the Writ transferred title without having sufficient information in the Adversary Complaint or Motions to Dismiss to support that conclusion. Therefore, viewing the allegations in the light most favorable to Appellant, *Phillips*, 515 F.3d at 230, and limiting our review to the pleadings, Fed. R. Civ. P. 12(d); *Pension Ben. Guar. Corp.*, 998 F.2d at 1196, it could be inferred from the allegations that title to the transferred assets remain with the Debtor. Because it appears title to the Debtor's assets is unclear, Appellant should have been afforded additional discovery as to that issue and be given the opportunity to present material pertinent to the motion, if so converted. Fed. R. Civ. P. 12(d). The decision of the Bankruptcy Court as to Sullivan, ABS, Coastal, S. Schwartz, and B. Schwartz is **REVERSED** and **REMANDED** to the Bankruptcy Court for further discovery.

As to TD, however, the Bankruptcy Court's decision is affirmed. The fact that TD accepted less than the amount due to it for the assignment is not a sufficient ground to support Appellant's conspiracy claims as to TD. Accordingly, the Adversary Complaint fails to state a claim against

TD Bank and the Bankruptcy Court's decision to dismiss the Complaint pursuant to Rule 12(b)(6) is **AFFIRMED**.

**VI. CONCLUSION**

For the reasons set forth above, the orders of the Bankruptcy Court are **AFFIRMED** as to TD and **REVERSED AND REMANDED** as to Sullivan, ABS, Coastal, S. Schwartz, and B. Schwartz for further discovery.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  February 27, 2017

17